# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CECILLIA HICKS,                                :

                              Case No. 3:09-cv-452

              Plaintiff,

                              District Judge Timothy S. Black
                              Magistrate Judge Michael R. Merz

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

             Defendant.               :

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

   Plaintiff protectively filed an application for SSD on August 17, 2004, alleging disability from October 9, 2003, due to fibromyalgia, hypertension, tremors, loss of memory, migraines, hives, heart palpitations, numbness in fingers and toes, and blurred vision caused by medication. (Tr. 65-68; 125).  Plaintiff's application was denied initially and on reconsideration. (Tr. 39-42; 44-47).  Administrative Law Judge Thomas McNichols held a hearing and a supplemental hearing, (Tr. 480-512; 413-545), following which he determined that Plaintiff is not disabled.  (Tr. 18-30).  The Appeals Council denied Plaintiff's request for review, (Tr. 5-9), and Judge McNichols' decision became the Commissioner's final decision.

   In determining that Plaintiff is not disabled, Judge McNichols found that Plaintiff has severe fibromyalgia associated with arthralgias and neuralgias, hypertension, a history of

keratoclonus, obesity, and a history of depression, but that she did not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 24, ¶ 3; Tr. 25, ¶ 4). Judge McNichols also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 25, ¶ 5). Judge McNichols then used sections 202.14 through 202.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 28, ¶ 10). Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 30).

Plaintiff was hospitalized in October, 2003, for treatment of noncardiac chest pain, gastroesophageal reflux disease, hypertension, and C-spine degenerative changes. (Tr. 157-82). During that hospitalization, a cervical spine x-ray revealed mild degenerative changes from C3 through C6. *Id.*

A November 7, 2003, MRI of Plaintiff's cervical spine revealed degenerative changes at C6-7 and minimum insignificant spurring at C7-T1. (Tr. 322-23).

Plaintiff consulted with pain specialist Dr. Hines on November 20, 2003, who reported that Plaintiff presented for evaluation of neck and bilateral upper extremity pain, she had decreased range of motion in the cervical spine in all directions and exquisite tenderness to palpation in the bilateral trapezius and rhomboid region, and that her neurological examination was normal. (Tr. 190-92). Dr. Hines identified Plaintiff's diagnoses as cervical radiculopathy and spondylosis and he recommended cervical epidural injections. *Id.* Plaintiff underwent cervical epidural injections which Dr. Hines performed. (Tr. 211-30).

Plaintiff consulted with rheumatologist Dr. Zelman who reported on February 12,

2004, that Plaintiff walked with difficulty and used a cane, had decreased active range of motion of her shoulders, exhibited considerable pain behavior throughout the examination, had a 3+ trigger point evaluation, and that her strength testing was affected by inconsistent effort, but that no focal findings were appreciated. (Tr. 253-54). Dr. Zelman identified Plaintiff's diagnosis as fibromyalgia and nonorganic pain syndrome. *Id.*

Plaintiff consulted with neurologist Dr. Johnston who reported on March 11, 2004, that Plaintiff's neurological evaluation was normal, that she was able to toe and heel walk, and that her gait was normal and steady. (Tr. 264-65). Dr. Johnston concluded that Plaintiff had generalized pain of unclear etiology. *Id.*

On September 1, 2004, Dr. Hibler reported that Plaintiff's diagnoses were fibromyalgia, hypertension, cervical disc disease, and GERD. (Tr. 297-99). Dr. Hibler also reported that Plaintiff was able to lift up to fifteen pounds less than 20% of the workday, should completely avoid performing most postural activities, and that she had a severe limitation of her functional capacity and was incapable of minimum activity 75% to 100% of the time. *Id.* Dr. Hibler noted that Plaintiff was able to engage in only limited stress situations. *Id.*

Plaintiff continued to receive treatment from Dr. Hibler for complaints of pain until she moved to Ohio in 2006. (Tr. 341; 390).

Plaintiff began treating with Dr. Oza in March, 2007. (Tr. 447). He reported on January 18, 2008, that Plaintiff was seldom able to lift less than ten pounds, was able to sit and stand or walk for one hour periodically alternating sitting and standing or walking every fifteen minutes, and that she was unable to operate foot controls. (Tr. 440-42). Dr. Oza also reported that Plaintiff was seldom able to perform any postural activities, should avoid all exposure to environmentals, and

that she continually had fatigue, pain, shortness of breath, and vertigo. *Id.* Dr. Oza noted that Plaintiff's limitations has been present since at least October 9, 2003. *Id.*

Examining physician Dr. Danopulos reported on February 15, 2008, that Plaintiff used a walker, complained of pains and aches all over her body since 2003, that both of Plaintiff's shoulders revealed unusually restricted and painful motions, that she resisted motions, her upper arms and forearm muscles were painful by palpation, her grip strength was zero bilaterally without any obvious problem or atrophy in her hands or arms, and that she had long fingernails taken extremely good care of and expensively decorated. (Tr. 452-72). Dr. Danopulos also reported that both of Plaintiff's hips, knees, and ankles revealed highly restricted and painful motions, her thigh and calf muscles were painful by palpation, her spine was painful to pressure in its entire length, her cervical motions were restricted and painful, she got on and off the exam table without difficulty, straight leg raising was positive at ninety degrees, and that squatting and arising from squat, LS spine motions, and toe and heel gait were denied. *Id.* Dr. Danopulos noted that Plaintiff exhibited no evidence of nerve root compression or peripheral neuropathy and that her neurological exam was normal. *Id.* Dr. Danopulos opined that Plaintiff could not be evaluated properly because she did not cooperate properly and that the minimal and mild arthritic changes in her cervical and lumbosacral spine did not justify the cervical spine clinical findings and the refusal of proper lumbar spine motions. *Id.* Dr. Danopulos also opined that Plaintiff was able to occasionally lift and carry up to ten pounds, that her lifting and carrying ability could not be assessed because she did not perform grip strength, was able to sit for one hour without interruption and for seven hours in an eight-hour day, and that she was able to stand for twenty minutes without interruption and for one hour in an eight-hour day. *Id.* Dr. Danopulos noted that Plaintiff used a walker, but he determined

that there were no particular clinical findings to support the use of the walker except the generalized muscle and joint pain about which she complained. *Id.*

The medical advisor (MA) testified at the hearing that Plaintiff did not meet or equal the Listings, did not have any exertional limitation, and that she should never climb ladders, ropes, or scaffolds, and never balance. (Tr. 533-37). The MA also testified that Plaintiff should not perform jobs that involve depth perception or field of vision to the left, and that she should not operate moving machinery, work at unprotected heights, and that she should not engage in work-place driving. *Id.* The MA testified further that Plaintiff had fibromyalgia, had no disease that prevented the use of her hands or required her to wear gloves, that fibromyalgia did not interfere with the use of the hands, use of a walker was contraindicated in fibromyalgia, and that fibromyalgia patients were always encouraged to keep active and to build up their exercise tolerance to jogging. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by rejecting the opinions of the treating and examining physicians and by improperly evaluating her complaints of pain. (Doc. 10).

Plaintiff argues first that the Commissioner erred by rejecting Dr. Hibler's and Dr. Oza's opinions that she is disabled.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

7

>these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

8

to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Drs. Hibler's and Oza's opinions that Plaintiff is disabled, Judge McNichols determined that those opinions were not entitled to controlling or even great weight, for several reasons. (Tr. 27-28).

Although Dr. Hibler opined that Plaintiff is disabled, as Judge McNichols found, Dr. Hibler's opinion is not supported by any objective medical findings and is based primarily on Plaintiff's subjective complaints.  Additionally, Dr. Hibler's clinical notes contain few objective medical findings which would support his opinion that Plaintiff is severely limited in her abilities with respect to performing exertional activities and is therefore disabled.  *See, e.g.,* Tr. 289-329. Moreover,  Dr. Hibler's opinion is not supported by the objective medical test results which revealed, at worst, mild findings.  Finally, Dr. Hibler's opinion is inconsistent with Dr. Danopulos' findings, the MA's testimony, and the reviewing physicians' opinions. (Tr. 330-37).

Similarly, Dr. Oza's opinion that Plaintiff is disabled is based on Plaintiff's subjective allegations and is not supported by his clinical notes.  Specifically, Dr. Oza, who saw Plaintiff infrequently, documented few, if any, objective findings.  *See, e.g.,* Tr. 443-47; 473.  In addition, as with Dr. Hibler's opinion, Dr. Oza's opinion is not supported by the objective medical test results, is inconsistent with Dr. Danopulos' findings, the MA's testimony, and the reviewing physicians' opinions.

Plaintiff argues that the Commissioner improperly rejected Dr. Hibler's and Dr. Oza's opinions because she has fibromyalgia which does not exhibit objective findings.

Dr. Zelman first identified Plaintiff's diagnosis as fibromyalgia based on his finding that she had a  3+ trigger point evaluation.  The other medical providers have essentially accepted Plaintiff's diagnosis of fibromyalgia.

The Sixth Circuit has recognized that  fibromyalgia can be  a   severe  impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. *Rogers v. Commissioner of Social Security,* 486 F.3d 234,

243, (6th Cir. 2007), citing *Preston v. Secretary of Health & Human Services,* 854 F.2d 815, 820 (6th Cir. 1988)(per curiam).  Fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion. *Rogers, supra.*  The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.* (citation omitted).  Of course, the presence of a diagnosis alone is never conclusive evidence of disability. *See, Young v. Secretary of Department of Health and Human Services,* 925 F.2d 146 (6th Cir. 1990).  The mere diagnosis of an impairment does not indicate the severity of the condition nor the limitations, if any, that it imposes. *Id.*  Stated differently, the mere diagnosis of fibromyalgia does not automatically require a finding that an individual is disabled.

   Although Plaintiff has been diagnosed with fibromyalgia, Judge McNichols properly evaluated her limitations as a result of that impairment.  As noted above, in spite of Plaintiff's diagnosis, Dr. Danopulos, the MA, and the reviewing physicians opined that Plaintiff is capable of performing certain exertional activities which are consistent with performing substantial gainful activity.

   Under these facts, the Commissioner had an adequate basis for rejecting Dr. Hibler's opinion or Dr. Oza's opinion.

   Plaintiff argues next that the Commissioner erred by rejecting her allegations of pain.

   In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007).  Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints

11

of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

   For the same reasons that the Commissioner had an adequate basis for rejecting Drs. Hibler's and Oza's opinions, the Commissioner properly rejected Plaintiff's allegations of disabling pain. First, there are few objective clinical findings that support Plaintiff's allegations. In addition, the objective medical evidence does not support Plaintiff's complaints. Further, in spite of Plaintiff's diagnosis of fibromyalgia, as noted above, Dr. Danopulos, the MA, and the reviewing physicians opined that Plaintiff is capable of performing activities that are consistent with engaging in substantial gainful activity.

   The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a

verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

October 4, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).